1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| Lorelie Totanes, | Case No. 2:23-cv-01681-APG-DJA |
| Plaintiff, | |
| v. | **Order** |
| Target Corporation dba Target, et al., | |
| Defendants. | |

This is a personal injury case arising out of a Target employee hitting Plaintiff Lorelie Totanes with an inventory stocking cart, known as a "U-Boat." Plaintiff sues for damages, alleging claims for negligence; negligence per se; negligent hiring, training, and/or supervision; and agency/vicarious liability. Plaintiff moves for a protective order to prevent Defendant's noticed deposition of a third party from moving forward. Plaintiff also moves for spoliation sanctions for Defendant's alleged destruction of evidence. Because the Court finds that Plaintiff has not demonstrated that her interests are jeopardized by the third-party subpoena, the Court denies her motion for a protective order. Because the Court finds that Plaintiff has met her burden of showing that Defendant has destroyed certain evidence, but that Plaintiff has not met her burden of demonstrating that spoliation sanctions are appropriate, the Court denies her motion for spoliation sanctions without prejudice.

**Background**

On July 31, 2021, Plaintiff was shopping at Defendant's store when an employee struck her with a U-Boat. Another customer—Raymond Villalobos—approached the scene, told Plaintiff that she should not sign anything, and suggested that she get an attorney. (ECF No. 26-1 at 8). Villalobos provided Plaintiff with attorney Peter Angulo's information. (*Id.* at 14, 20). Villalobos was friends with non-attorney employee Cory Hilton at the Angulo Law Group, and

1    the office had represented Villalobos in his own personal injury action.  (ECF No. 26-1 at 14, 20);

2    (ECF No. 28 at 7).  Plaintiff ultimately retained Angulo Law Group and filed the instant lawsuit

3    in state court on July 18, 2023.  (ECF No. 1-3).  Defendant removed the action on October 16,

4    2023.  (ECF No. 1).

5         Plaintiff deposed Villalobos on July 16, 2024.  (ECF No. 26-1 at 2).  Villalobos testified

6    about his belief that there should be more security footage of the incident and that he had taken a

7    course in surveillance video during his time as a manager at EZ PAWN  (*Id.* at 9, 15).  But he

8    confirmed that he was not an expert witness.  (*Id.* at 9).

9         Following the deposition, Defendant subpoenaed Villalobos and Angulo, asking both of

10   them for any communications between Villalobos and Angulo, Angulo Law Group, or any of

11   Angulo Law Group's employees.  (ECF No. 26-3); (ECF No. 26-4).  Angulo responded with the

12   below screenshot of a text message dated April 26, 2024, from Villalobos (named "Ray Bonez")

13   to Hilton containing a video of a ceiling.  (ECF No. 26-5) (ECF No. 28-11 at 5).

14

15

16

17

18

19                          

20

21

22

23

24

25

26

27

28

1    Defendant then served a deposition and document subpoena on Hilton via email and

2    personal service in late October and early November.[1]  (ECF No. 26-7); (ECF No. 28 at 9).

3    Hilton objected to the subpoena on November 13, 2024, asking for clarification regarding its

4    scope and informing Defendant's counsel that he would be willing to reschedule if he received

5    answers to his questions.  (ECF No. 28-10 at 2-3).  Defendant's counsel emailed Hilton back to

6    reschedule, but did not respond to his questions.  (*Id.* at 6).  Hilton replied that he would not

7    respond until counsel answered his questions.  (*Id.*).

8    On November 14, 2024, Plaintiff moved for a protective order regarding the subpoena

9    Defendant served on Hilton.  (ECF No. 26).  Hilton has not separately moved to quash or for a

10   protective order.  And the Angulo Law Group does not purport to represent Hilton in Plaintiff's

11   motion for protective order.  Discovery then closed on November 15, 2024.  (ECF No. 25).

12   Defendant moved for summary judgment on December 16, 2024.  (ECF No. 30).  Plaintiff

13   responded (ECF No. 31) and filed her countermotion for spoliation sanctions (ECF No. 32) on

14   January 6, 2025.

15                                    **Discussion**

16   I.    **Motion for protective order.**

17         ***A.    Legal standard.***

18   A party to a case may move for a protective order regarding to a subpoena issued to a

19   nonparty if it believes *its own interest* is jeopardized by discovery sought from a third party and

20   has standing under Federal Rule of Civil Procedure 26(c) to seek a protective order.  *Board of*

21   *Trustees of Southern Nevada Joint Management and Culinary and Bartenders Training Fund v.*

22   *Fava*, 2:18-cv-00036-JCM-DJA, 2019 WL 11093817, at *2 (D. Nev. Oct. 31, 2019) (emphasis

23   added).  A party may not move for a protective order based on the interests of a nonparty.  *R.J.*

24   *Armstrong Living Trust v. Holmes*, No. 3:22-cv-00375-ART-CSD, 2024 WL 584675, at *2 (D.

25

26

27   _____

28   [1] Plaintiff initially argued that Defendant did not properly serve this subpoena, but later withdrew
     that argument.  (ECF No. 27).

1   Nev. Feb. 9, 2024).  "Instead, a party may only move to protect its own interest affected by

2   discovery sought from the non-party." *Id.*

3        Under Federal Rule of Civil Procedure 26(c), the court may, for good cause, issue an

4   order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

5   or expense. Fed. R. Civ. P. 26(c).  However, the scope of discovery is broad.  Federal Rule of

6   Civil Procedure 26(b)(1) provides that the scope of discovery includes "any nonprivileged matter

7   that is relevant to any party's claim or defense and proportional to the needs of the case,

8   considering the importance of the issues at stake in the action, the amount in controversy, the

9   parties' relative access to relevant information, the parties' resources, the importance of discovery

10  in resolving the issues, and whether the burden or expense of the proposed discovery outweighs

11  its likely benefit." Fed. R. Civ. P. 26(b)(1).

12       Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit

13  deposing an opposing party's attorney, or that attorney's employee. *See American Cas. Co. of*

14  *Reading, Pa. v. Krieger*, 160 F.R.D. 582, 585 (S.D. Cal. Mar. 22, 1995).  However, many courts

15  in this circuit have adopted the three-part test articulated by the Eighth Circuit in *Shelton v.*

16  *American Motors Corp.* for determining when deposing opposing counsel is appropriate.  *See*

17  *Harter v. CPS Sec. (USA), Inc.*, No. 2:12-cv-00084-MMD-PAL, 2013 WL 129418, at *8 (D. Nev.

18  Jan. 9, 2013); *see A.A. v. County of Riverside*, No. ED CV 14-2556-VAP-SPx, 2016 WL

19  11953845, at *2 n.1 (C.D. Cal. Aug. 8, 2016) (explaining that "[c]ourts in this district and across

20  the country recognize *Shelton* as the leading case on opposing counsel depositions").  Under

21  *Shelton*, depositions of opposing counsel should be limited to situations where: (1) no other

22  means exist to obtain the information sought; (2) the information is both relevant and non-

23  privileged; and (3) the information is crucial to the preparation of the case.  *Shelton v. American*

24  *Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).  Ultimately, the party seeking a protective

25  order bears the burden of persuasion.  *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 106 (D. Nev.

26  2023).

27

28

1    **B.    Analysis.**

2    The Court denies Plaintiff's motion for a protective order.  As a preliminary matter,

3    Plaintiff brings her motion on her own behalf.  Hilton has not separately moved to quash the

4    subpoena or for a protective order.  And Plaintiff's counsel does not purport to represent Hilton.

5    As a result, Plaintiff may only obtain a protective order over the subpoena if she believes

6    that her own interest is jeopardized by the discovery.  She may not assert Hilton's interests.

7    Instead, she may only move to protect her own interests.  But here, Plaintiff relies only on

8    Hilton's interests in arguing for a protective order.  She asserts that some of the text messages

9    between Villalobos and Hilton that the subpoena seeks will be irrelevant to the case because the

10   two men have a friendship.  But she does not explain how this overbreadth would harm her.

11   Plaintiff also argues that "*Mr. Hilton* has the absolute right to not discuss his private

12   conversations ab[o]ut a potential myriad of topics in a public forum when those discussions have

13   nothing to do with the litigation at hand."  (ECF No. 26 at 6) (emphasis added).  But again,

14   Plaintiff raises only Hilton's interests and not her own.

15   The closest Plaintiff comes to asserting her own interests is her argument that the

16   deposition may result in Defendant's counsel asking Hilton questions that may infringe on the

17   attorney client privilege because Hilton is an Angulo Law Group employee.  However, neither

18   party adequately addresses the three-part *Shelton* test.  Plaintiff does not argue that other means

19   exist for Defendant to obtain the information it seeks, that the information is irrelevant, or that the

20   information is not crucial to Defendant's preparation of the case.  Instead, Plaintiff simply states

21   in conclusory fashion that "the unknown information being sought is not relevant to the case, is

22   potentially privileged[,] and is not crucial to the preparation of this case."  (ECF No. 26 at 7).

23   Defendant, on the other hand, does not address the factors at all in response.[2]

24   _____

25   [2] Instead, Defendant makes the confusing argument that Plaintiff's attorney failed to claim a
     privilege under Federal Rule of Civil Procedure 45(e)(2) by expressly making the claim and

26   describing the withheld documents.  (ECF No. 28 at 15).  But it is not clear that Rule 45(e)(2)
     squarely applies here.  Neither Plaintiff nor Plaintiff's attorney is the party to whom the subpoena

27   was directed and so, neither of them is "the person withholding subpoenaed information." Fed.
     R. Civ. P. 45(e)(2).  Additionally, Plaintiff's argument regarding privilege appears directed to

28   Hilton's deposition, not necessarily the documents sought.  But the requirement to "describe the

1    The Court cannot manufacture these arguments for the parties. *See Independent Towers*

2    *of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (explaining that "[o]ur circuit

3    has repeatedly admonished that we cannot manufacture arguments for an appellant") (internal

4    quotations omitted). And because Plaintiff is moving for a protective order, and thus bears the

5    burden of persuasion, the Court declines to find in Plaintiff's favor on this issue. So, the Court

6    denies Plaintiff's motion for a protective order.

7    **II.    Motion for spoliation sanctions.**

8        ***A.    Legal standard.***

9        Spoliation of evidence includes the failure to preserve property for another's use as

10    evidence in a pending or reasonably foreseeable litigation. *See United States v. Kitsap Physicians*

11    *Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). The party requesting spoliation sanctions bears the

12    burden of establishing the elements of a spoliation claim. *Reinsdorf v. Sketchers U.S.A., Inc.*, 296

13    F.R.D. 604, 626 (C.D. Cal. 2013). The threshold question in a spoliation decision is whether

14    evidence was altered or destroyed. *See id.*; *see Lemus v. Olaveson*, No. 2:14-cv-01381-JCM-

15    NJK, 2015 WL 995378, at *9 (D. Nev. Mar. 5, 2015).

16        But "[t]he bare fact that evidence has been altered or destroyed does not necessarily mean

17    that the party has engaged in sanction-worthy spoliation." *Reinsdorf*, 296 F.R.D. at 626. Instead,

18    if a party alters or destroys evidence, the party requesting spoliation sanctions must further

19    demonstrate that: (1) the party having control over the evidence had an obligation to preserve it at

20    the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and

21    (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact

22    could find that it would support that claim or defense. *Id.* Many courts in the Ninth Circuit have

23    found that that a "culpable state of mind includes negligence." *See id.*; *see Soule v. P.F. Chang's*

24    *China Bistro, Inc.*, No. 2:18-cv-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26,

25    2020) (compiling cases).

26    _____

27    nature of the withheld documents, communications, or tangible things," is specific to documents,
      not depositions. Fed. R. Civ. P. 45(e)(1)(ii). Indeed, in responding to Plaintiff's Rule 26(c)

28    motion for protective order, Defendant does not address Rule 26 at all.

If a party demonstrates that another party spoliated evidence, and that sanctions are warranted under the three factors, the court may impose spoliation sanctions under two sources: Federal Rule of Civil Procedure 37 and the court's inherent authority. When it comes to spoliation of electronically stored information—like video footage—only Rule 37(e) sanctions are available. *See Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024). The text of Rule 37(e) specifies that, if a covered loss of information occurs, the court must make the specified findings required by paragraphs (1) or (2) of Rule 37(e) before it may impose a sanction. *Id.* Those paragraphs require different findings depending on the nature and severity of the sanction. *Id.*

Paragraph (1) sets forth a general authority, "upon [a] finding of prejudice to another party from loss of the information," to impose remedial sanctions that are "no greater than necessary to cure the prejudice" resulting from the loss. *Id.* (citing Fed. R. Civ. P. 37(e)(1)). Paragraph (2), however, establishes a more demanding standard before the court may impose certain types of severe sanctions. *Id.* Such sanctions, the rule states, may be imposed "*only* upon finding that the party [who caused the loss] acted with the *intent* to deprive another party of the information's use in the litigation." *Id.* (citing Fed. R. Civ. P. 37(e)(2)) (emphasis added by the Ninth Circuit). The severe sanctions that are subject to paragraph (2)'s more demanding standard are: (1) "presum[ing] that the lost information was unfavorable to the party" that caused the loss; (2) "instruct[ing] the jury that it may or must presume the information was unfavorable to th[at] party"; or (3) "dismiss[ing] the action or enter[ing] a default judgment." *Id.* at 1078-79 (citing Fed. R. Civ. P. 37(e)(2)(A)–(C)). "Given Rule 37(e)'s careful specification of the findings that *must* be made before any sanction may be imposed for a covered loss of information, it is clear that the rule, by its terms, precludes a court from resorting to inherent authority to evade its strictures." *Id.* (emphasis in original).

### B.    Analysis.

The Court denies Plaintiff's motion for spoliation sanctions because she does not meet her burden of showing that Defendant altered or destroyed deposition testimony, employee files, or evidence of Defendant's security camera layout. The only evidence for which Plaintiff does meet

1    that burden is video footage.  But even then, she does not fully develop her arguments.  So, the

2    Court denies her motion without prejudice.

3         Plaintiff does not meet her threshold burden of showing that Defendant altered or

4    destroyed deposition testimony, employee files, or evidence of Defendant's security camera

5    layout.  Plaintiff argues that "Defendant has refused to allow relevant questioning in deposition,

6    has refused to provide employee files to allow Plaintiff to locate and talk to the person who

7    gathered those videos, and has refused to provide even a layout of the security cameras in the

8    area/department where this incident occurred—whether the incident was captured or not."  (ECF

9    No. 32 at 13).  But a party does not destroy evidence by refusing to respond to deposition

10   questions or discovery requests.  That behavior may warrant a motion to compel, but not a

11   spoliation motion.[3]  Additionally, Defendant asserts in response that it did eventually provide

12   employee files to Plaintiff,[4] conceding that it only provided "limited information related to

13   disciplinary actions for the subject incident, if any, and training information."  (ECF No. 37 at

14   15).  That Defendant eventually produced this information belies Plaintiff's argument that

15   Defendant destroyed it.  And withholding or redacting certain information is not the same as

16   altering or destroying it.  Again, while that behavior may warrant a motion to compel, it does not

17   warrant a spoliation motion.

18        The only piece of evidence for which Plaintiff establishes the threshold question of

19   whether the evidence was altered or destroyed is video footage of the incident.  Plaintiff asserts

20   that Defendant only provided one video of the actual incident, which shows Plaintiff and her

21

22   [3] Plaintiff does not assert, and the record does not reflect, that she ever moved to compel
     Defendant to allow for certain deposition questions, to produce unredacted or complete versions
23   of employee files, or to produce a layout of its cameras.

24   [4] Defendant adds that it "requested" the employee files at issue on October 29, 2024, before
     discovery closed on November 15, 2024, but did not produce them to Plaintiff until January 17,
25   2025, the day after receiving Plaintiff's motion for spoliation sanctions.  (ECF No. 37 at 12, 15).
     Plaintiff argues in reply that Defendant's late production of this information and redactions of the
26   employee files, in particular the employees' contact information, "evidences [sic] Defendant's
     bad faith defense of this matter."  (ECF No. 38 at 5).  But again, delayed, limited, and redacted
27   production of documents does not warrant spoliation sanctions because Plaintiff has not made the
28   threshold showing that Defendant destroyed or altered this information.

husband walking into the aisle where the incident occurred, but does not show the impact other than depicting Plaintiff leaning over her cart after the impact. (ECF No. 32 at 2). Plaintiff argues that other video footage must exist for three reasons. The Court only finds the third persuasive.

First, Plaintiff argues that Defendant's own policies mandated the store to "[e]xport footage from 30 minutes before the Incident to 30 minutes after the [I]ncident from any cameras in the department/area, ***even if the Incident is not captured.***" (ECF No. 32 at 10-11) (emphasis in Plaintiff's brief). But neither Plaintiff nor Defendant provide sufficient context about these policies for the Court to find that Defendant destroyed evidence. While Plaintiff cites to "Exhibit 25 at DEF00006" for this quote, Exhibit 25 to Plaintiff's motion is a collection of photos of the aisle, not any of Defendant's policies. And these policies do not otherwise appear in Plaintiff's exhibits to her motion. Additionally, in its response, Defendant does not address these policies at all. Without more, the Court cannot find that these policies establish that Defendant destroyed evidence.

Second, Plaintiff argues that the video Villalobos sent to Hilton and Villalobos' testimony means that "there were numerous cameras in the area—especially in the aisle where it occurred" which should have captured the impact. (ECF No. 32 at 10-11). The Court is not convinced. While Villalobos testified that Defendant has cameras "across every aisle" in its stores and that he has some experience with surveillance cameras, he was not designated as an expert in this case. (ECF No. 26-1 at 9, 15). And while Villalobos produced a screenshot of a text in which he sent Hilton a video of what appears to be cameras on a ceiling, neither party has provided the Court with sufficient authenticating information about that video (for example, when Villalobos took the video, where he took it, what store he was in, or what part of the store he was in) for the Court to conclude that Defendant destroyed evidence.

Third, Plaintiff argues that her counsel's conversations with Defendant's claims adjuster who had reviewed video actually showing the impact demonstrates that Defendant destroyed footage. The Court agrees. In his declaration, Plaintiff's counsel asserts that he "engaged in phone conversations with the assigned adjuster who verbally communicated on at least two occasions that she had viewed videos which clearly displayed the incident." (ECF No. 32 at 16).

Plaintiff also attaches an email from the adjuster, Colleen Hansen, that bolsters this statement. (ECF No. 32-1). Hansen said in that email that she had previously "stated that the severity of the impact was in question as it appears that your client was only bumped with the cart. She was not struck with any significant force and she was not knocked to the ground. Unfortunately, I am unable to provide a copy of the video." (ECF No. 32-1). But Defendant does not address Hansen's statements—as presented in counsel's declaration or the attached email—at all in response. Instead, Defendant simply states that Plaintiff's arguments are without merit because they are based on "Plaintiff's belief and speculation that additional security video related to the subject incident *could and/or should* exist, and not based upon evidence indicating that additional security video actually existed, which it does not." (ECF No. 37 at 14) (emphasis in Defendant's brief). The Court is persuaded by Plaintiff's arguments, and Defendant's nonresponse, that Plaintiff has met her threshold burden of establishing that Defendant destroyed video evidence that it provided to its claims adjuster, but not to Plaintiff.

But the bare fact that Plaintiff has carried her burden of showing that Defendant may have destroyed video evidence does not necessarily mean that Defendant engaged in sanction-worthy spoliation. This is because Plaintiff has not otherwise demonstrated the elements of a spoliation claim. Plaintiff provides no arguments that Defendant had an obligation to preserve the video at the time it was destroyed or that Defendant destroyed it with a culpable state of mind. And while the Court can infer that the video, if it exists, would have been relevant to Plaintiff's case, Plaintiff did not explicitly make this argument. Plaintiff has not carried her burden of establishing the elements of her spoliation claim.

Plaintiff also failed to argue what sanctions under Rule 37(e) would be appropriate and why. Plaintiff asserts that the Court may impose sanctions under either its inherent authority or Rule 37. But that is not the case. Ninth Circuit authority and Rule 37(e) preclude the Court from relying on its inherent authority when assessing sanctions for the destruction of electronically stored evidence, like video footage. Plaintiff also suggests that the Court could dismiss the case or enter an "instruction," but ignores that the Court must make a finding of Defendant's intent before doing so. (ECF No. 32 at 13); (ECF No. 38 at 6). But Plaintiff does not provide sufficient

arguments regarding Defendant's intent for the Court to make this finding.  And the Court cannot and will not manufacture these arguments for Plaintiff.  *See Independent Towers of Washington*, 350 F.3d at 929.  So, the Court denies her motion for spoliation sanctions without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for protective order (ECF No. 26) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's countermotion for spoliation sanctions (ECF No. 32) is **denied without prejudice.**

DATED: February 20, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE